**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-03004-RM-KMT

JAMES S. GRADY, d/b/a GROUP FIVE PHOTOSPORTS,

      Plaintiff,

v.

PETER NELSON,

      Defendant.

---

**ORDER OF FINAL ENTRY OF JUDGMENT AND PERMANENT INJUNCTION**

---

This matter is before the Court on Plaintiff's Motion for Final Default Judgment, Damages, Attorney's Fees & Costs, and Permanent Injunction Against Defendant Peter Nelson (ECF No. 27) (the "Motion"). For the reasons set forth below, the Court grants the Motion and awards damages as set forth below.

**I.    BACKGROUND**

**A.    Procedural History**

Plaintiff initiated this lawsuit on November 15, 2012, alleging violations of the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* ("Copyright Act") and the Lanham Act, 15 U.S.C. §§ *et seq.* ("Trademark Act"). (ECF No. 1, Complaint, at 1.) Defendant was served with the Summons and Complaint on May 15, 2013. (ECF No. 17.) Defendant, however, failed to answer or otherwise respond to Plaintiff's Complaint. Following Plaintiff's request for entry of default pursuant to Fed. R. Civ. P. 55(a) (ECF No. 25), the Clerk of Court entered default

against Defendant on November 12, 2013 (ECF No. 26).  Defendant has not responded to the

Clerk's entry of default or the present Motion.

> **B.     Factual Allegations**

The Court held a hearing on December 10, 2014 and heard the testimony of Plaintiff

James S. Grady.  Based upon the testimony of Plaintiff and the deemed admissions pursuant to

F.R.C.P. Rule 8(b)(6) based upon Defendant's failure to answer the Complaint, the Court makes

the following factual findings.  Plaintiff is a Colorado resident doing business as Group Five

Photosports, which "produces, markets and distributes premium quality entertainment products,

including wholly original Internet content, Internet websites, videos, DVDs and photographs."

(ECF No. 1 ¶ 14.)  Plaintiff is the creator and owner of a group of 762 photographs and videos

(the "Photographs" and/or "Videos").  (*Id.* ¶¶ 2, 25.)  The Photographs and Videos are all

registered with the United States Copyright Office.  (*Id.* ¶¶ 15, 25.)  They are distributed through

the website TrueTeenBabes.com.  (*Id.* ¶ 29.)  Plaintiff has registered the trademark

TrueTeenBabes.  (*Id.* ¶¶ 5, 16.)  This trademark appears on all of the Photographs and appears at

the beginning and end of each Video recording.  (*Id.* ¶ 15.)  Plaintiff seeks statutory damages for

the registrations list on Exhibit A, which is attached hereto and incorporated by reference herein,

in the amount of $7,188.68 per work qualifying for statutory damages (the "Works").[1]  Certain of

the registrations for the Works contain multiple photographs, which were not part of a

compilation or a derivative work, but were registered on one application pursuant to 37 CFR

§202.3(b)(8), (10).  Each photograph, whether registered separately or combined into one

---

[1] The Works include Defendant's infringement of certain of the infringed Videos and Photographs, but exclude certain registrations which were registered after the infringement occurred and more than three months after their publication.

registration pursuant to 37 CFR §202.3(b)(8), (10), has an independent copyright life as each

photograph can be exploited separately through Plaintiff's individual sales of the photographs or

otherwise.

Defendant is an individual who has supplied Plaintiff's copyrighted Photographs and Videos

"to photo, video and DVD trading websites, pay to view websites, online forums, clubs and groups,"

some of which are pornographic and/or illegal. (*Id.* ¶¶ 21, 30.) Defendant purchased subscriptions to

TrueTeenBabes.com. (*Id.* ¶¶ 12, 29.) Defendant downloaded the Photographs and Videos and then

willfully distributed them to others over the Internet. (*Id.* ¶¶ 59-61.) He did so by uploading the

Photographs and Videos onto three websites: DarkJB.com, Motherless.com, and

Megaupload.com. (*Id.* ¶¶ 30-32, 36-47.) He created forums specifically directing other users of

these websites to Plaintiff's illegally uploaded images and videos along with language

encouraging other users to similarly upload Plaintiff's works. (*Id.* ¶ 40.) He instructed viewers

on how they could download the Photographs and Videos without compensation to Plaintiff. (*Id.*

¶ 60.) Defendant sometimes received compensation for sharing the Photographs and Videos in

the form of increased access to other sections of Megaupload. (*See, e.g.*, *id.* ¶¶ 45, 67.)

Defendant did not obtain Plaintiff's permission to distribute the Photographs and Videos in any

manner. (*Id.* ¶¶ 29, 51, 54.)

Defendant subscribed to TrueTeenBabes.com to obtain access to the Photographs and

Videos. (*Id.* ¶ 29.) In June of 2009, Defendant first registered as a Megaupload contributor.

Between November 2010 and July 2011, Defendant illegally provided Megaupload with 19 of

the Plaintiff's video works without authorization. (ECF No. 27-1, Plaintiff's Declaration, ¶ 8.)

Between August 29, 2009 and January 18, 2012 Defendant uploaded 469 of Plaintiff's works to

the website Motherless.com.  (*Id.* ¶ 13.)  At some point during or after October 2009, Defendant uploaded an additional 255 photographs and 19 videos to the website known as DarkJb.com.  (*Id.* ¶¶ 18,19.)

In total, Plaintiff identifies 762 instances of unlawful uploading of copyrighted Photographs and Videos by Defendant, including 106 that qualify for statutory damages.  Based on these facts, Plaintiff asserts five claims: (1) copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) trademark infringement—false designation of origin; and (5) trademark infringement-dilution of value. (ECF No. 1 ¶¶ 57-92.) Plaintiff seeks statutory damages in the amount of $762,000.00 plus $5,571.50 in attorney's fees. (ECF No. 27-2, Declaration of Mollie B. Hawes, at 3.)  Plaintiff also seeks injunctive relief "permanently enjoin[ing] Defendant from engaging in any further infringement of Grady-owned copyrighted works." *Id.* at 2.

## II.   ANALYSIS

Pursuant to Fed. R. Civ. P. 55(a), default may enter against a party who fails to appear or otherwise defend a lawsuit.  Here, entry of default was proper because Defendant failed to respond to Plaintiff's Complaint.  Before proceeding with a default judgment, however, the Court must consider whether it has jurisdiction, whether the facts establish a legitimate basis for the entry of judgment, and whether damages can be ascertained.

### A.   Jurisdiction and Venue

In determining whether a default judgment is warranted, the Court must first consider whether it has jurisdiction over the subject matter and the defendant. *Dennis Garberg & Associates, Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802

F.2d 1200, 1202-03 (10th Cir. 1986).  The Court must do so in consideration of the well-established rule that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *United States v. 51 Pieces of Real Prop.,* 17 F.3d 1306, 1309 (10th Cir. 1994).

## 1.   Subject Matter Jurisdiction

Plaintiff asserts that the Court has jurisdiction over this matter because the action arises out of alleged violations of the Copyright Act and the Trademark Act, each of which are federal statutes.  (ECF No. 1 at 1.)  Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Because Plaintiff's causes of action arise under federal law, the Court has jurisdiction over the subject matter of this litigation.

## 2.   Personal Jurisdiction

In addition to subject matter jurisdiction, entry of default judgment in a civil case requires personal jurisdiction over the defendant.  *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).

### a.   Service

Before finding that the Court has personal jurisdiction over Defendant, the Court must first address the adequacy of service.  *See Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983). Plaintiff's Complaint identifies Defendant as an individual.  (ECF No. 1 ¶ 24.)  Therefore, the Court analyzes the adequacy of service in the context of Fed. R. Civ. P. 4(e), which establishes the requirements for service of an individual within a judicial district of the United States.  Rule 4(e) provides that service on an individual in a judicial district of the United States is adequate if effected

5

in one of four ways, including by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A).

On June 14, 2013, Plaintiff filed a return of service demonstrating that a Sheriff of Lake County, Ohio, where Defendant resides, personally delivered the Summons and Complaint on May 23, 2013 to the Defendant. (ECF No. 17.) Plaintiff subsequently filed the proof of service, obtained entry of default from the Clerk of Court, and filed the present Motion seeking default judgment against Defendant, as outlined above.

Based on the foregoing authority and on the full record of this case, the Court finds that Plaintiff complied with the relevant notice statutes. As such, this Court has personal jurisdiction over the Defendant with respect to this action.

   b.   *Specific Jurisdiction*

Plaintiff bears the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assoc., Inc.*, 115 F.3d at 773.

In *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011), the Tenth Circuit Court of Appeals clarified the law in this Circuit regarding the intersection of personal jurisdiction and the internet. In that case, the court found that evidence that a website forum user posted a message on the website was insufficient to establish either specific or general personal jurisdiction in Oklahoma over the forum user, because the message was geographically neutral and the forum was directed at a world-wide audience of market traders with no inherent interest or tie to Oklahoma. *Shrader*, 633 F.3d at

6

1248.  The Tenth Circuit took the opportunity to emphasize that, in determining whether personal

jurisdiction exists over a particular defendant, "courts look to indications that a defendant deliberately

directed its message at an audience in the forum state and intended harm to the plaintiff occurring

primarily or particularly in the forum state." *Id.* at 1241.  In other words, "it is necessary to adapt the

analysis of personal jurisdiction [to internet activity] by placing emphasis on the internet user or site

*intentionally directing* his/her/its activity or operation at the forum state . . . ." *Id.* (emphasis in

original).  Without expressly adopting the test, the Tenth Circuit proceeded to approvingly quote the

Fourth Circuit Court of Appeals' discussion on this issue in *ALS Scan, Inc. v. Digital Serv.*

*Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002):

> [A] State may, consistent with due process, exercise judicial power
> over a person outside of the State when that person (1) directs electronic
> activity into the State, (2) with the manifested intent of engaging in business
> or other interactions within the State, and (3) that activity creates, in a person
> within the State, a potential cause of action cognizable in the State's courts.
> Under this standard, a person who simply places information on the Internet
> does not subject himself to jurisdiction in each State into which the
> electronic signal is transmitted and received. Such passive Internet activity
> does not generally include directing electronic activity into the State with the
> manifested intent of engaging business or other interactions in the State thus
> creating in a person within the State a potential cause of action cognizable in
> courts located in the State.

*Shrader*, 633 F.3d at 1240-41.

Here, personal jurisdiction over Defendant is proper in Colorado because Defendant

allegedly infringed Plaintiff's copyrights by transacting business in Colorado.  (ECF No. 1 ¶¶ 9-12.)

*See Grady v. Bremer*, No. 11-cv-02586-WYD-MJW, 2012 WL 370281, at *1 (D. Colo. Feb. 2,

2012) (finding that personal jurisdiction was proper in a similar case brought by this same Plaintiff

against a different defendant accused of copyright infringement) (citing C.R.S. § 13-1-124(1)(a)

(providing that "any person, whether or not a resident of the state of Colorado, . . . submits [himself]

to the jurisdiction of the courts of this state concerning any cause of action arising from . . . [t]he

transaction of any business within this state").  The information provided by Plaintiff demonstrates

that he is a resident of Colorado with his principal place of business located in Littleton, Colorado.

(ECF No. 1 ¶ 14.)  He is the registered owner of the copyrights for the Photographs and Videos

displayed within the subscriber areas for the website TrueTeenBabes.com.  Defendant supplies

Plaintiff's Photographs and Videos to others also in competition with Plaintiff.  (*Id.* ¶ 23.)

Defendant has intentionally directed his internet activity toward the state of Colorado by

making multiple purchases and downloads over a several-year time frame from a business that is

solely owned and located in this state.  He has expressly done so through his repeated interactions

in the state, and his agreement to the "Terms of Use" contract. By redistributing his downloads in

direct violation of the Terms of Use, Defendant has subjected himself to a potential cause of

action in this state's courts.  (*See* ECF No. 2-1, "Terms and Conditions, ("You also agree to not

distribute any of the stories, videos, interviews, or photographs contained within this publication,

in whole or part, without prior written consent . . . .").)  Further, a party may consent to personal

jurisdiction by agreeing to a forum selection clause contained in a contract, which is deemed to

be prima facie valid.  *See Burger King. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *Milk 'N'*

*More, Inc. v. Beauvart*, 963 F.2d 1342, 1346 (10th Cir. 1992).  Defendant has made such an

agreement here.  (*See, e.g.*, ECF No. 2-1 ¶ (agreeing "[t]hat the laws of United States and the

state of Colorado shall govern this agreement").)

Thus, having found that Plaintiff has properly served Defendant and that other

requirements of specific jurisdiction have been met, the Court finds that it has personal

jurisdiction over Defendant.  *See also Grady v. Brodersen*, No. 13-cv-00752-REB-BNB, 2014

WL 519245 (D. Colo. Feb. 10, 2014) (finding that personal jurisdiction was proper in a similar case brought by this same Plaintiff against a different defendant accused of copyright infringement).

c.   Venue

When Defendant subscribed to Plaintiff's websites, he contractually agreed to a number of terms and conditions, including that venue for any action under the subscription agreement would be in the state of Colorado. (ECF No. 1 ¶ 29.)  The Court therefore finds that venue is proper pursuant to 28 U.S.C. § 1391(b)(2), (3).  *See Grady*, 2012 WL 370281, at *2.

**B.     Entry of Default Judgment**

Even after a proper entry of default, the Court must decide "'whether the unchallenged facts constitute a legitimate cause of action'" such that a judgment should be entered.  *Bixler,* 596 F.3d at 762 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Fed. Prac. & Proc.* § 2688, at 63 (3d ed. 1998)).  "'There must be a sufficient basis in the pleadings for the judgment entered.'"  *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445- LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation.  *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).  The Court deems the well-pled facts of the

complaint to be true. *Vibe Tech., LLC v. Suddath*, No. 06-cv-00812, 2009 WL 2055186, at *1

(D. Colo. 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d

1319, 1323 (7th Cir. 1983)).  Undisputed facts set forth by the moving party in affidavits and

exhibits are also accepted as true.  *Id.*

      1.    <u>Copyright Infringement</u>

      A plaintiff must provide evidence of two elements to prove a copyright infringement

claim: (1) ownership of a valid copyright, and (2) unlawful appropriation of protected portions of

the copyrighted work. *See Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1056 (D. Colo.

2012) (citing *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009)).  The

second element requires the plaintiff to demonstrate that: (1) the defendant actually copied the

copyrighted work, and (2) the elements of the copied work were "protected expression and of such

importance to the copied work that the appropriation is actionable." *Shell*, 899 F. Supp. 2d at 1056

(citing *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993)).  Treating the

allegations as true, the Complaint and documentation attached to the Complaint and the Motion

sufficiently demonstrate the existence of valid copyrights, the first element of a copyright

infringement claim. (*See* ECF Nos. 2-2 through 2-21, Cert. of Reg.) *See also Mid Am. Title Co. v.*

*Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (stating that a certificate of copyright registration provides a

prima facie presumption of validity).

      Turning to the second element, that Defendant unlawfully appropriated the copyrighted

works, the Complaint states that Defendant downloaded the Photographs and Videos and then

willfully and maliciously distributed them to others over the Internet by uploading them onto four

websites: DarkJB.com, Motherless.com, and Megaupload.com. (ECF No. 1 ¶¶ 39, 47.)  Defendant

did not obtain Plaintiff's permission to share the Photographs and Videos and did not compensate Plaintiff for doing so.  (*Id.* ¶¶ 50, 53, 60.)  Based on these allegations, the Court finds that Plaintiff has sufficiently alleged the second element of his claim, that Defendant unlawfully appropriated Plaintiff's copyrighted works.  *See Shell*, 899 F. Supp. 2d at 1057.

The Court therefore concludes that Plaintiff has demonstrated actionable copyright infringement by Defendant.

### 2.   Contributory Copyright Infringement

A Plaintiff must establish two elements to prove a contributory copyright infringement claim: (1) That Defendant directly infringed the copyright and (2) That Defendant caused the infringing conduct of another.  *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1181 (10th Cir. 2009), quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

The Court has already concluded, *supra*, that the Plaintiff has demonstrated actionable copyright infringement by Defendant, thus satisfying the first element of contributory copyright infringement.  Turning to the second element, that the Defendant causes the infringing conduct of another, the Complaint states that Plaintiff's works were downloaded over seven million times by various internet users because of Defendant's distribution of Plaintiff's works to pornographic websites.  (ECF No. 1 ¶ 47.)  In this instance, the manner in which Defendant directly infringed the copyrighted works, by uploading them to a website from which any internet user could in turn download them, also supports a finding that Defendant committed contributory copyright infringement.  (ECF No. 27-1 at 21.)

The Court therefore concludes that Plaintiff has demonstrated actionable contributory

copyright infringement by Defendant.

### 3.     Vicarious Copyright Infringement

A Plaintiff must establish three elements to prove a vicarious copyright infringement claim: (1) the commission of direct copyright infringement, (2) the enjoyment of a direct financial benefit from another's infringing activity, and (3) the right and ability to supervise the infringing activity.  *See La Resolana Architects*, 555 F.3d at 1181.

As set forth above, the Complaint states that Plaintiff's works were downloaded over seven million times by various internet users because of Defendant's distribution of Plaintiff's works to various websites.  (ECF No. 1 ¶ 47.)  Regarding the second element of vicarious copyright infringement, the Defendant has uploaded the Plaintiff's copyrighted works to a commercial website so that others could view the works without compensation to Plaintiff and he did so to profit by way of gaining access to premium portions of the subject website, and he did so to deprive Plaintiff of income for the sale of his copyrighted works by providing them for free to the public.  (ECF No. 27-1 at 19.)

Regarding the third element of vicarious copyright infringement, the Defendant had control over the infringing acts of other individuals by creating a special forum entitled "TrueTeenBabes" on a website which caused other users to upload and download Plaintiff's works without authorization.  (ECF No. 27-1 at 14.)  Additionally, Defendant had the ability to reduce or eliminate these subsequent acts of infringement by removing the forum he created but failed to do so.  (ECF No. 27-1 at 17.)

### 4.     Trademark Infringement - False Designation of Origin

A Plaintiff must establish three elements to prove a claim of trademark infringement

under 15 USC §§ 1125(a): (1) That Plaintiff owns a protectable trademark; (2) That the Defendant used the trademark in connection with goods or services; and (3) That use of the trademark by the Defendant "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. *Digital Satellite Connections, LLC v. Dish Network Corp.*, 13-CV-02934-REB-CBS, 2014 WL 5335807, at *5 (D. Colo. Oct. 20, 2014) (citing *Utah Lighthouse Ministry v. Found. For Apologetic Info. & Research,* 527 F.3d 1045, 1050 (10th Cir. 2008)).

The Plaintiff's Trademark Certificate with the United States Patent and Trademark Office demonstrates that the Plaintiff is the owner of a valid trademark, "TrueTeenBabes."

The infringed Works at issue included the trademark phrase "True Teen Babes" and were distributed by Defendant on other websites, including a pornographic website, such that users of such websites gained access to additional media.  Plaintiff's Photographs and Videos were uploaded for the purpose of depriving Plaintiff of the proceeds of the use of this media and, at least, for granting Defendant access to a "VIP" section of the website Darkjb.com.  (ECF No. 27-1 ¶19.)

With respect to the third element of trademark infringement, "false designation of origin," the posting of Plaintiff's works onto a pornographic and other websites is likely to cause confusion as to Plaintiff's affiliation or grant of authority to use the trademark.  Here, Defendant has posted 762 of Plaintiff's copyrighted works to various websites, thus causing the false image of approval, affiliation or sponsorship by Plaintiff.  (ECF No. 27-1 ¶10.)

The Court therefore concludes that Plaintiff has demonstrated actionable trademark

infringement by Defendant.

        5.    <u>Relief</u>

In addition to finding that Plaintiff has a legal basis for relief, a default judgment cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Plaintiff requests entry of a default judgment in the amounts of $762,000.00 in statutory damages and attorneys' fees and costs. Plaintiff also seeks taxable costs and a permanent injunction. The Court addresses each request in turn.

        *a.    Statutory Damages*

A plaintiff successfully demonstrating illegal copyright infringement by a defendant is entitled to receive actual damages but may elect, instead, to recover an award of statutory damages. 17 U.S.C. § 504(b), (c). Plaintiff here has elected to recover statutory damages. (ECF No. 27 at 3.) Thus, at the discretion of the Court, Plaintiff may recover an award of statutory damages "for all infringements involved in the action, with respect to any one work, in a sum of not less than $750 or more than $30,000." 17 U.S.C. § 504(c).

        (1) Availability of Damages and Fees Under 17 U.S.C. § 412

A plaintiff generally may not seek statutory damages pursuant to 17 U.S.C. § 504(c) if the alleged infringement occurred prior to the registration date of the copyright. See 17 U.S.C. § 412. Specifically:

        In any action under this title, other than an action brought for violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not

later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(b), **no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for— (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.**

17 U.S.C. § 412 (emphasis added).

Plaintiff is seeking an award of statutory damages as to 106 of the Works since the Defendant's infringement of the other Videos and Photographs occurred prior to their registration and outside of the "three month" window.   *See* 17 U.S.C. § 412(2).

The Photographs and Videos comprising Copyrights PA 1-794-812 and PA 1-794-818 were registered after they were uploaded by Defendant, but within three months of their first date of publication. (*See* ECF Nos. 2-20, "Exhibits to Complaint," and 2-21, "Exhibit A Table.") Therefore, statutory damages are available for the infringement of the six works associated with these two copyrights.

The following copyrights were registered before the associated Works were uploaded by the Defendant and are therefore eligible for statutory damages: VA 1-692-436; VA 1-716-730; VA 1-695-136; PA 1-792-977.  In total, Defendant infringed upon 106 of Plaintiff's Works that are eligible for statutory damages.

(2) Number of Statutory Violations

Plaintiff seeks statutory damages for each individual Photograph and Video infringed upon by Defendant that is eligible for statutory damages.  (*See* ECF No. 27 at 3.)  The next question faced by the Court, therefore, is how many of the 106 Photographs and Videos

15

protected by copyrights and uploaded by Defendant warrant a separate statutory award.

Plaintiff references three websites in his Complaint: TrueTeenBabes.com, ModelLibby.com, and LibbyTurner.com.  (ECF No. 1 ¶ 2.)  The 106 Works were published on the three websites and were copyrighted in six batches.

Defendant posted 762 separate Photographs and Videos on three websites, 106 of which qualify for statutory damages, which Plaintiff had previously chosen to register under six separate Copyrights.  For the purpose of calculating statutory damages, Defendant's infringement of the Works from the six copyrights constitutes 106 separate infringements as provided by 17 U.S.C. § 504(c)(1).  The Copyright Act provides the Register of Copyrights with the authority to regulate certain aspects of application and registration, including by permitting a single registration for a group of related works.  *See* 17 USC §408(c)(1).  Indeed, the Register of Copyrights has permitted the registration of groups of related works under a single registration form.  *See* 37 CFR §202.3(b)(8), (10).  The Copyright Act provides that the certificate shall contain the information given in the application, together with the number and effective date of the registration. 17 U.S.C. 410(a).  If an application is made for a compilation or derivative work, the application must identify the works from which it is composed.  17 U.S.C. 409(9).  The Copyright Office's official forms for the related subject matter, Form VA and Form PA, both require that an applicant complete section 6 by identifying if it is for a changed work, derivative work or compilation.  *See* Form VA and Form PA.

The Plaintiff did not register the works as compilations when registering the copyrights and the prima facie evidence of this choice is found on the copyright registration certificates. (*See* ECF Nos. 2-3 through 2-21.)  Plaintiff offers viewing access to photographs and videos on

16

an individual basis to members of his website.  (*See* ECF No. 27-1 at 2.)  *See also Playboy Enter. Inc. v. Sanfilippo*, No. 97-0670-IEG (LSP), 1998 WL 207856, at *5 (S.D. Cal. Mar. 25, 1998) (" although each of these images may have appeared in a singular issue of one of plaintiff's copyrighted publications, these images are subject to re-use and redistribution in accordance with various licensing arrangements. Furthermore, each image represents a singular and copyrightable effort concerning a particular model, photographer, and location. The fact that many of these images appeared together should not detract from the protection afforded to each individual effort").

Here, the Plaintiff has introduced sufficient evidence showing that the photographs were related, and thus eligible for filing under a single application for registration, but not a compilation, and Defendant has not in any manner rebutted this evidence. hen Thus, the Court concludes that the circumstances of this case warrant a statutory award for infringement of 106 Works.

(3) Amount of Award

Plaintiff may recover an award of statutory damages "for all infringements involved in the action, with respect to any one work, in a sum of not less than $750 or more than $30,000." 17 U.S.C. § 504(c).  Within these limitations, the Court has broad discretion in awarding statutory damages. *See, e.g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986).  By way of example, the Court may consider such things as appropriate compensation for the plaintiff, the need for deterrence and punishment of the defendant, and the degree of culpability in the defendant's infringing conduct.  *See, e.g., id.* at 1117.  The Court may also examine "expenses saved and profits reaped by the infringing party" and "revenues lost by the copyright holder." *Lifted Research Grp., Inc. v. Behdad*, No. 08-390(CKK), 2010 WL 2662277,

at *5 (D.D.C. June 30, 2010).

The Court first examines the degree of culpability in Defendant's infringing conduct. "Acting 'willfully' means acting with knowledge that one's actions constitute copyright infringement." *Merchant Media, LLC v. H.S.M. Int'l*, No. 05 Civ. 2817(JES), 2006 WL 3479022, at *4 (S.D.N.Y. Nov. 30, 2006) (citing *Fitzgerald*, 807 F.2d at 1115). Defendant, over the course of nearly two years, repeatedly bought or downloaded Plaintiff's Photographs and Videos and uploaded them to other websites, at least sometimes receiving compensation for doing so. (*See, e.g.*, ECF No. 1 ¶ 41.) Defendant in fact infringed upon at least 762 of Plaintiff's Photographs and Videos, and further encouraged and assisted others to do so, causing no less than 7,000,000 acts of infringement by third parties. (ECF No. 27-1 at 15.) Further, in spite of repeatedly receiving notice of this action, Defendant has failed to appear and defend in this lawsuit, from which inaction his willfulness may also be inferred. *See, e.g.*, *Merchant Media*, 2006 WL 3479022, at *5. Based on these facts and allegations, the Court finds that Defendant acted with a high degree of culpability in his infringement of Plaintiff's copyrights.

In addition to Defendant's culpability, the Court has considered the large number of individual Photographs and Videos redistributed by Defendant; Defendant's repeated redistribution of these works over a nearly two-year period; the fact that Defendant received compensation for at least some of the redistribution; the unknown but potentially very large number of other persons who received these Photographs and Videos from Defendant, some of whom may have redistributed the Photographs and Videos themselves; and the dilution of the value of Plaintiff's copyrights. *See Lifted Research Grp.*, 2010 WL 2662277, at *5; *Fitzgerald*, 807 F.2d at 1117. Based on these considerations, the Court concludes that a statutory award of $7,000 per infringement is appropriate

under these circumstances "to punish plainly deliberate infringing conduct and to deter future violations" by Defendant and others. *See Merchant Media*, 2006 WL 3479022, at *5 (collecting cases awarding high-dollar amounts of statutory damages). Because the Court has found that 106 of Plaintiff's copyrighted Works were violated and subject to statutory damages, the Court orders that Plaintiff be awarded $742,000 in damages.

b.    *Permanent Injunction*

To obtain a permanent injunction in a copyright infringement case, the plaintiff must show "both a past infringement and a continuing threat of infringement." *Beginner Music v. Tallgrass Broad., LLC*, No. 09-4050, 2009 WL 2475186, at *2 (D. Kan. Aug. 12, 2009). In this case, injunctive relief is justified based on Defendant's willful violation of Plaintiff's rights and the need to deter him from future violations. *See Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *2 (D. Kan. Mar. 30, 2012). As Plaintiff argues, "the Defendant's long standing pattern of infringing on Plaintiff's works" combined with the intentional unauthorized publication to millions of potential viewers demonstrates that an injunction is necessary and appropriate to deter Defendant. (ECF No. 27 at 11; *see also* ECF No. 27-1 ¶ 21 ("The infringements directly initiated, as well as contributory and vicarious infringements caused by the Defendant continue.").) Accordingly, the Court orders that a permanent injunction be entered against Defendant, as stated below.

c.    *Attorneys' Fees and Costs*

Pursuant to 17 U.S.C. § 505, the Court may award a reasonable attorney's fee to the prevailing party in a copyright infringement action. An award of attorney's fees in a copyright case depends on the Court's consideration of the following factors: (1) frivolousness; (2)

motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case);" and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994). Based on its consideration of the allegations and filings in this matter, the Court finds that the allegations underlying Plaintiff's complaint were neither frivolous nor objectively unreasonable. *See Arista Records, LLC v. Launch Media, Inc.*, 344 F. App'x 648, 650 (2d Cir. 2009). Further, the allegations in the Complaint, taken as true, demonstrate that Defendant's acts were willful and blatantly illegal and that an award of attorney's fees is reasonable to compensate Plaintiff and help deter Defendant from similar future conduct. *See id.* at 651. The Court therefore finds that Plaintiff should be awarded attorney's fees pursuant to 17 U.S.C. § 505.

To determine a reasonable fee award, the Court must conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 641 U.S. 424, 433 (1983). *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2002). A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate. *Hensley*, 641 U.S. at 433. To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (internal quotation marks omitted). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. "In determining what is a reasonable time in which

to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983).

(1) Miller & Steiert, P.C.

Plaintiff requests an amount of $5,571.50 in attorneys' fees and costs for services performed by Plaintiff's present counsel, Miller & Steiert, P.C. ("Miller & Steiert"). (ECF No. 27-2, "Supplemental Declaration of Mollie B. Hawes filed on December 5, 2014," at 3.) According to the affidavit submitted by Attorney Hawes, she charged $250.00 per hour on this matter for her time and $100.00 per hour for her paralegal's time, and $150.00 per hour for associate Benjamin Broder's time on this matter. (ECF No. 27-2 at 3; "Supplemental Declaration of Mollie B. Hawes filed on December 5, 2014," at ¶ 3.) The Court finds that these hourly rates are reasonable. *See, e.g.*, *Mrs. Condies Salad Co., Inc.*, 2012 WL 1431371, at *2.

Based on the Courts' years of experience and careful consideration of Attorney Hawes' Affidavit (ECF No. 33-2) and the issues underlying this matter, the Court finds that the claimed attorney's fees of $5,385.00 are reasonable here. *See, e.g.*, *Onesource Commercial Prop. Servs., Inc. v. City & Cnty. of Denver*, No. 10-cv02273-WJM-KLM, 2011 WL 3583398, at *2 (D. Colo. Aug. 12, 2011). Thus, the Court orders that Plaintiff be awarded $5,385.00 in attorneys' fees.

(2) Research Costs

The Court further finds that the $186.50 incurred by Plaintiff for Westlaw research costs are reasonable and orders that Plaintiff should be awarded this amount. (ECF No. 27-2 at 4.)

### III. CONCLUSION

Based on the foregoing, the Court HEREBY ORDERS:

1. That DEFAULT JUDGMENT be entered in favor of Plaintiff and against Defendant in the amount of $747,571.00 (consisting of $742,000 in damages, and $5,571.50 in attorney fees and costs);

2. That a permanent injunction enter enjoining Defendant as follows:

    a. Defendant shall be and hereby is enjoined from directly or indirectly infringing on the Photographs and Videos from the websites, Photographs, and Videos bearing the United States Copyright Office Registration Nos. VA 1-692-436, VA 1-703-455, VA 1-716-734, VA 1-716-735, VA 1-791-720, VA 1-801-229, et al., including, without limitation, by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiff's copyrighted works, to distribute (i.e., upload) any of Plaintiff's copyrighted works, or to make any of Plaintiff's copyrighted works available for distribution to the public, except pursuant to a lawful license or with the Plaintiff's express consent;

    b. The Defendant shall destroy all copies of Plaintiff's Photographs and Videos that Defendant has downloaded onto any computer hard drive or server and shall destroy all copies of those downloaded Photographs and Videos transferred onto any physical medium or device in Defendant's possession, custody, or control;

    c. The Defendant shall hereby be enjoined from directly or indirectly infringing upon the Trademarks, whether now in existence or later created, that are owned or controlled by Plaintiff (or any parent, subsidiary, or affiliate of Plaintiff), except pursuant to a lawful license or with Plaintiff's express consent.

DATED this 15th day of December, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge